UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD JACKSON,

    Plaintiff,

v.                                      Case No. 1:14-cv-628
                                        Hon. Hugh W. Brenneman, Jr.
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
    _____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on December 7, 1959 (AR 212).[1] He completed the 12th grade, had additional training in welding, and had previous employment as a construction laborer, factory line worker and maintenance worker (AR 216-17). The record reflects that plaintiff suffered injuries in two bicycle accidents (AR 34). On May 4, 2009, plaintiff was hit by a car, and on September 3, 2010, plaintiff collided into the rear end of a car while fleeing from police (AR 34, 81-2). Plaintiff alleged a disability onset date of May 4, 2009 (AR 212). He identified his disabling conditions a torn meniscus, "lower 5,4,3 disc torn", and a fractured shoulder (AR 216). An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision on January 11, 2013 (AR 26-41). In this decision, the ALJ found that plaintiff was under a disability, as defined by the Social

---

[1] Citations to the administrative record will be referenced as (AR "page #").

Security Act, from September 3, 2010 through September 24, 2011 (AR 37).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

### A. Steps 1, 2 and 3

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since September 3, 2010, the date he became disabled, and that he met the insured status requirements of the Social Security Act through June 30, 2012 (AR 30).

At step two, the ALJ found that since the alleged onset date of disability, May 4, 2009, plaintiff had the following severe impairments: status-post right knee meniscectomy; mild degenerative disc disease of the lumbar spine; dysthymia; chronic opioid use; cannabis dependence; and history of cocaine dependence (AR 30). However, beginning on the established onset date of disability, September 3, 2010, plaintiff had additional severe impairments of status-post massive left rotator cuff tear with retraction and status-post arthroscopic debridement of irreparable massive cuff tear (AR 30).

At step three, the ALJ found that from the alleged onset date of May 4, 2009 through January 11, 2013 (the date of the decision), plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 31).

### B. Steps 4 and 5 prior to September 3, 2010

The ALJ decided at the fourth step that prior to September 3, 2010, the date he became disabled, plaintiff had the residual functional capacity (RFC):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lifting and/or carrying, and pushing and/or pulling up to 20 pounds occasionally and 10 pounds frequently, but no more than 10 pounds with the left arm or to assist the right arm up to 20 pounds; standing and/or walking, or sitting, up to six hours each per eight-hour work day, with normal breaks; no climbing of ropes, ladders, or scaffolds, and no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; no more than occasional overhead reaching with the left upper extremity; doing unskilled work with no more than occasional contact with others.

(AR 31).[2]

### C.   Steps 4 and 5 from September 3, 2010 through September 24, 2011

The ALJ decided at the fourth step that from September 3, 2010 through September 24, 2011, plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lifting and/or carrying, and pushing and/or pulling up to 20 pounds occasionally and 10 pounds frequently, but no more than 10 pounds with the left arm or to assist the right arm up to 20 pounds; standing and/or walking, or sitting, up to six hours each per eight-hour work day, with normal breaks; no climbing of ropes, ladders, or scaffolds, and no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; no more than occasional overhead reaching with the left upper extremity; doing unskilled work with no more than occasional contact with others; but not on a full-time basis.

(AR 35-36). The ALJ also found that from September 3, 2010 through September 24, 2011, plaintiff was unable to perform any past relevant work (AR 36).

---

[2] The Court notes that the ALJ's decision made no finding as to whether plaintiff could perform any past relevant work or perform other work in the national economy with respect to the time period of May 4, 2009 through September 2, 2010. However, because this deficiency was not identified in the statement of errors, it is not subject to review in this appeal. *See* Notice ("Plaintiff's initial brief must contain a Statement of Errors, setting forth the specific errors of fact or law upon which Plaintiff seeks reversal or remand") (docket no. 8).

At step five, the ALJ found that plaintiff's acquired job skills did not transfer to other occupations within the RFC for this time period, and that from September 3, 2010 through September 24, 2011, there were no jobs that existed in significant numbers in the national economy that plaintiff could have performed (AR 37). Accordingly, plaintiff was under a disability, as defined by the Social Security Act, from September 3, 2010 through September 24, 2011 (AR 37).

### D. Medical improvement

The ALJ found medical improvement occurred as of September 25, 2011, the date that plaintiff's disability ended (AR 38).

### E. Steps 4 and 5 since September 25, 2011

The ALJ decided at the fourth step that since September 25, 2011, plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lifting and/or carrying, and pushing and/or pulling up to 20 pounds occasionally and 10 pounds frequently, but no more than 10 pounds with the left arm or to assist the right arm up to 20 pounds; standing and/or walking, or sitting, up to six hours each per eight-hour work day, with normal breaks; no climbing of ropes, ladders, or scaffolds, and no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; no more than occasional overhead reaching with the left upper extremity; doing unskilled work with no more than occasional contact with others.

(AR 38). The ALJ also found that plaintiff has not been able to perfrom any past relevant work since September 25, 2011 (AR 39).

At step five, the ALJ found that beginning September 25, 2011, transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that plaintiff was "not disabled" whether or not he had transferable job skills, citing SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2 (AR 40).

In addition, the ALJ found that a vocational expert (VE) had testified that given plaintiff's age, education, work experience, and RFC as of September 25, 2011, the individual would be able to perform the requirements of representative occupations such as a visual production inspector, of which there are 5,400 jobs in the regional economy defined as the Lower Peninsula of the State of Michigan (AR 40). Based on this testimony, the ALJ found that beginning September 25, 2011, plaintiff has been capable of making a successful adjustment to work that existed in significant numbers in the national economy and was not disabled.

      **F.    ALJ's conclusions**

Accordingly, the ALJ found that plaintiff was disabled "from but not prior to September 3, 2010, through but not after September 24, 2011" (AR 41).

**III. ANALYSIS**

Plaintiff raised three issues on appeal[3]:

      **A.    The ALJ erred by improperly concluding that plaintiff's medical condition improved as of September 25, 2011, and plaintiff no longer was disabled as of that date.**

Plaintiff contends that the ALJ erred in finding that medical improvement occurred on September 25, 2011. Plaintiff's claim is construed as a "closed period case," i.e., one in which the ALJ determines that the claimant was disabled for a finite period of time that commenced and

---

[3] For his relief, plaintiff seeks to reverse the Appeals Council's "decision upholding the ALJ's denial of benefits." Plaintiff's Brief at pp. ID## 823, 826-27 (docket no. 10). The Court notes that it is the ALJ's decision, not the Appeals Council's action, which is subject to review. When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). "Only final decisions of the [Commissioner] are subject to judicial review under [42 U.S.C.] § 405(g)." *Willis v. Secretary of Health and Human Services*, No. 93-6337, 1995 WL 31591 at * 2 (6th Cir. 1995), *citing Califano v. Saunders*, 430 U.S. 99, 108 (1977).

ended prior to the date of the ALJ's decision. *See, e.g., Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir. 1987). The medical improvement standard applies to closed period cases. "Once an ALJ finds a claimant disabled, he must find a medical improvement in the claimant's condition to end his benefits, a finding that requires 'substantial evidence' of a 'medical improvement' and proof that he is 'now able to engage in substantial gainful activity.'" *Niemasz v. Barnhart*, 155 Fed.Appx. 836, 840 (6th Cir. 2005), quoting 42 U.S.C. § 423(f)(1). *See Shepherd v. Apfel*, 184 F.3d 1196, 1198, 1200 (10th Cir. 1999) (medical improvement standard as defined in 20 C.F.R. §§ 404.1594(b)(1) and 416.994(b)(1)(i) applies to closed period cases).

"Medical improvement" is defined in 20 C.F.R. §§ 404.1594(b)(1) and 416.994(b)(1)(i) in relevant part as follows:

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . .

> Here, the ALJ explained his basis for this determination:

> Allowing for a reasonable recovery time of two months and an additional two months after his May 2011 knee surgery, by September 25, 2011 the claimant had regained sufficient function of his knee to allow for full-time employment within his capacity for limited light work. He expressed satisfaction with his shoulder surgery, and even though Dr. Theut characterized the rotator cuff tear as "massive" and "irreparable", he did not suggest any further treatment. He also released the claimant from further care for his right knee.

(AR 38). Plaintiff expresses two areas of disagreement with the ALJ.

First, plaintiff contends that treating surgeon Dr. Theut noted that plaintiff had an "irreparable massive cuff tear" (AR 629) but that the ALJ "did not comprehend the nature of VA

8

[Veteran's Administration] treatment" and mistakenly concluded that plaintiff recovered because Dr. Theut released him from treatment. Plaintiff's Amended Brief at pp. ID## 836-37 (docket no. 12). Plaintiff cites no legal authority in support of his claim that the ALJ improperly evaluated the opinion of a treating physician. Nor does plaintiff address his medical history in any detail. Rather, plaintiff simply lists citations to 11 pages of the documents supplied to the Appeals Council (AR 8-18) and 191 pages of medical records (i.e., Exhibits 1F, 4F, 5F, 8F, 9F, 12F; and 13F). *Id.* at p. ID# 837. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Thus, this argument is waived.

Second, plaintiff contends that the ALJ made two statements regarding his credibility which were "illogical". *Id.* at pp. ID## 837-38. First, "[t]he claimant's credibility is eroded by his demonstrated indifference for the law and his child support responsibilities, and more so by his long history of substance abuse and recent history of narcotic drug-seeking behavior" (AR 39). Second, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [i.e., his shoulder injury, surgeries and recovery period] are generally credible from September 3, 2010 through September 24, 2011" (AR 36). *Id.*

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th

Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

In evaluating plaintiff's credibility in general, the ALJ refers to plaintiff's indifference to the law and history of substance abuse noting relevant portions of plaintiff's statements made to an examining psychologist:

> He acknowledged past substance abuse, including crack cocaine daily from 1987 to January 2010, current use of marijuana since age 22, but not for the past two days, and smoking up to five "joints" a day in the past. He said he has cut back to two "blunts" a day since 2009. Of his three substance abuse treatment experiences, the last was in 1997. He also acknowledged a history of five felony and seven misdemeanor arrests, including drug charges, as well as larceny from buildings and from people.

(AR 33). In a similar vein, the ALJ noted that with respect to child support deficiencies, plaintiff "said he did not drive because his license had been revoked by the Friend of the Court (presumably for failing to pay child support)" (AR 32).

In addition, the ALJ addressed plaintiff's drug seeking behavior as follows:

>Also in the records from the VA are noted concerns about possible drug-seeking behavior. On May 23, 2012 the claimant reported having left his narcotic pain medications on a bus, and was asking for early replacement. He was encouraged to contact the police department. (Ex 12F/1) On June 22,2012, he told the provider that he was planning a trip out of town and wanted an early refill of his hydrocodone. Records revealed he had been given extra, on May 25 after the reported bus incident, and then had obtained his regular refills on June 5, and was now requesting another refill 14 days early. Because of his known past substance abuse, early refill was declined this time.

(AR 35).

With respect to plaintiff's drug seeking behavior, courts have held that such behavior can form a basis for rejecting a claimant's testimony regarding pain and limitations. *See, e.g., Massey v. Commissioner Social Security Administration*, 400 Fed.Appx. 192, 194 (9th Cir. 2010) ("the ALJ's interpretation that [the claimant] is engaged in drug-seeking behavior is a clear and convincing reason for disregarding his testimony"); *Poppa v. Astrue*, 569 F.3d 1167, 1172 (10th Cir. 2009) ("there is sufficient evidence in the record to support the ALJ's determination that [the claimant's] credibility about her pain and limitations was compromised by her drug-seeking behavior"); *Simila v. Astrue*, 573 F.3d 503, 519-20 (7th Cir. 2009) (the ALJ could properly reject plaintiff's credibility based on drug-seeking behavior); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (the claimant's credibility undermined where he received a regimen of pain medication from two different doctors); *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003) ("[a] claimant's misuse of medications is a valid factor in an ALJ's credibility determinations").

Plaintiff contends that the ALJ's credibility determination is illogical, because while the ALJ found that plaintiff was credible with respect to his condition as it existed between September 3, 2010 and September 24, 2011, he was not credible with respect to his condition beginning September 25, 2011. Plaintiff's Amend. Brief at pp. ID ## 837-38 (docket no. 12).

Plaintiff notes that the matters which the ALJ found to erode his credibility occurred both before he was deemed disabled and after his disability terminated on September 24, 2011. *Id.* Plaintiff has cited no legal authority in support of his claim.

Based on this record, the Court concludes that the ALJ's credibility determination is supported by substantial evidence. The ALJ found that plaintiff lacked credibility due to his demonstrated indifference for the law and his child support responsibilities, his long history of substance abuse, and his recent history of narcotic drug-seeking behavior (AR 39). Nevertheless, after reviewing the medical record (including MRI's for plaintiff's left shoulder and right knee) and noting that plaintiff underwent two surgeries involving different limbs (left shoulder and right knee) in the course of about two months (March 15, 2011 and May 24, 2011, respectively), the ALJ exercised his discretion in determining that plaintiff *was* credible with respect to his claim of suffering from disabling impairments from September 3, 2010 through September 24, 2011 (AR 34-36, 38). This time frame reflects dates from when plaintiff suffered his knee injury (September 3, 2010) until he recuperated from the second surgery (September 24, 2011). In establishing the latter date for medical improvement, the ALJ stated:

> Allowing for a reasonable recovery time of two months and an additional two months after his May 2011 knee surgery, by September 25, 2011 the claimant had regained sufficient function of his knee to allow for full-time employment within his capacity for limited light work. He expressed satisfaction with his shoulder surgery, and even though Dr. Theut characterized the rotator cuff tear as "massive" and "irreparable", he did not suggest any further treatment. He also released the claimant from further care for his right knee.

(AR 38).

The Court finds no inconsistency in the ALJ's determination that, despite plaintiff's lack of credibility, the medical records supported plaintiff's claim that he was disabled from

September 3, 2010 through September 24, 2011. There is no compelling reason to disturb the ALJ's credibility determination. *Smith*, 307 F.3d at 379. Accordingly, plaintiff's claim of error will be denied.

> **B.  The ALJ erred by giving no controlling weight to statements from plaintiff's VA treating source as required by SSR 96-2p and SSR 06-03p.**

Plaintiff contends that the ALJ erred by failing to give controlling weight to an opinion from a physician's assistant, Mr. Lyons, who treated plaintiff at the VA. Plaintiff's claim is based upon a "work note" Mr. Lyons prepared on September 5, 2012, which stated:

> JACKSON, RONALD J was seen in clinic May 15, 2012. He has severe degenerative arthritis of the right knee. He is followed through Orthopedic Clinic at the Detroit VAHC. As his therapy is ongoing it is unknown if he will be able to return to work nor when that can occur. Thus far he has had physical therapy, medications and knee joint injections without improvement. He has been seen in this clinic since August, 2008 for this knee pain. Patient will not be able to work until cleared by Orthopedics to return to regular work.

(AR 765). The ALJ addressed this work note as follows:

> As for the opinion evidence, the claimant has provided a brief note from Michael J. Lyons, PAC, his primary care provider at the VA outpatient clinic in Grand Rapids, Michigan, dated September 5, 2012 (Ex 13F/l). He shared his view that it was unknown if or when the claimant would be able to return to work because he was then currently involved in physical therapy for his degenerative arthritis of the right knee. Mr. Lyons further noted that the claimant had been seen once in the Grand Rapids clinic, in May 2012, and receives his care through the VA medical center in Detroit, Michigan. He added that the claimant would not be able to work until the Detroit orthopedic clinic releases him.
>
> The undersigned gives no weight to the Mr. Lyons "opinion". He is not an acceptable medical source for program purposes; he "opines" about something he acknowledges he knows nothing about; and then defers his opinion to the other source.

(AR 39).

The ALJ correctly noted that Mr. Lyons was not an acceptable medical source under the regulations. *See* 20 C.F.R. §§ 404.913(a) and 416.1513(a) ("[w]e need evidence from acceptable medical sources to establish whether you have a medically determinable impairment[]"; such sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists). While Mr. Lyons' opinion can be considered as evidence from an "other" medical source, it is not entitled the weight given to the opinion of an "acceptable medical source" such as a doctor. *See* 20 C.F.R. §§ 404.1513(d)(1) and 416.913(d)(1) (evidence from "other" medical sources includes information from nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists). *See e.g., Gayheart,* 710 F.3d at 378 (psychological therapist is not an acceptable medical source under the regulations); *Shontos v. Barnhart*, 328 F.3d 418, 425-26 (8th Cir. 2003) (nurse practitioner is not an acceptable medical source under § 404.1513(a), but can be considered as an "other" medical source under 20 C.F.R. § 404.1513(d)(1)); *Nierzwick v. Commissioner of Social Security*, 7 Fed. Appx. 358, 363 (6th Cir. 2001) (physical therapist's report not afforded significant weight because the therapist is not recognized as an acceptable medical source). *See also* Social Security Ruling (SSR) 06-3p (recognizing that opinions from other medical sources, such as nurse practitioners, physicians' assistants and therapists "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file").[4] Here, the record reflects that the ALJ evaluated Mr. Lyon's rather cryptic work note as the opinion of an "other" medical source consistent with SSR 06-3p. Plaintiff's claim of error will be denied.

---

[4] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

       **C.**      **The ALJ erred by failing to consider the VE's testimony that plaintiff's focus and concentration limitations would preclude fill time work.**

Plaintiff contends that the ALJ erred by reciting only part of the VE's testimony in his decision and asks that the Court reverse the Appeals Council's decision upholding the ALJ's denial of benefits since September 25, 2011. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). "T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994). While plaintiff contests the ALJ's evaluation of the VE's testimony, he does not address the legal standard applicable to hypothetical questions posed at step five of the sequential evaluation nor apply the law to the facts in this case. A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). Accordingly, this argument is waived. *See McPherson*, 125 F.3d at 995-96.

      **IV. CONCLUSION**

For the reasons discussed, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion will be issued forthwith.


Dated:  July 31, 2015                              /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge